CLERK'S OFFICE U.S. DIST. COURT
AT ABINGDON, VA
FILED

JAN 11 2018

JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

# UNITED STATES DISTRICT COURT
для the
Western District of Virginia

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

Cellco Partnership d/b/a Verizon Wireless
Service Provider
(re: Target # 706-612-7300)

Case No. 2:18MJ00003

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

PLEASE SEE ATTACHMENT "A"

located in the ___WESTERN___ District of ___VIRGINIA___, there is now concealed *(identify the person or describe the property to be seized)*:

PLEASE SEE ATTACHMENT "B"

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☒ evidence of a crime;
- ☒ contraband, fruits of crime, or other items illegally possessed;
- ☒ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC 841 | Distribution of Controlled Substances |

The application is based on these facts:

PLEASE SEE THE ATTACHED AFFIDAVIT.

- ☒ Continued on the attached sheet.
- ☒ Delayed notice of __30__ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
Applicant's signature

ATF Special Agent Stephen Levesque
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 1/11/18 10:30 AM

_____
Judge's signature
JAMES P. JONES, USDJ
Honorable ~~Pamela M. Sargent, USMJ~~
*Printed name and title*

City and state: Abingdon, Virginia

# ATTACHMENT A

## Property to Be Searched

1. The cellular telephone assigned call number **(706) 612-7300** (the "Target Cell Phone"), whose wireless service provider is Cellco Partnership d/b/a Verizon Wireless, a company headquartered at 180 Washington Valley Rd, Bedminster, NJ 07921.

2. Information about the location of the Target Cell Phone that is within the possession, custody, or control of Cellco Partnership d/b/a Verizon Wireless, including information about the location of the cellular telephone if it is subsequently assigned a different call number.

3. For a period of forty-five days, during all times of day and night, subsequent to the issuance of the warrant.

# ATTACHMENT B

## Particular Things to be Seized

All information about the location of the Target Cell Phone described in Attachment A for a period of thirty days, during all times of day and night. "Information about the location of the Target Cell phone" includes all available E-911 Phase II data, GPS data, latitude-longitude data and other precise location information, any data related to Range to Tower (RTT), as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the cellular telephone described in Attachment A.

To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of Cellco Partnership d/b/a Verizon Wireless, Cellco Partnership d/b/a Verizon Wireless is required to disclose the Location Information to the government. In addition, Cellco Partnership d/b/a Verizon Wireless must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with Cellco Partnership d/b/a Verizon Wireless services, including by initiating a signal to determine the location of the Target Cell Phone on Cellco Partnership d/b/a Verizon Wireless's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate Cellco Partnership d/b/a Verizon Wireless for reasonable expenses incurred in furnishing such facilities or assistance.

This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. See 18 U.S.C. § 3103a(b)(2).

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| IN RE APPLICATION OF THE UNITED STATES OF AMERICA FOR A SEARCH WARRANT FOR LOCATION INFORMATION FOR CELLULAR DEVICE UTILIZING PHONE NUMBER (706) 612-7300 | Case No. 2:18MJ00003<br><br>Filed Under Seal |

## AFFIDAVIT IN SUPPORT OF
## APPLICATIONS FOR SEARCH WARRANTS

I, ATF Special Agent Stephen Levesque, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION

1. I make the affidavit in support of applications for a search warrant under Federal Rule of Criminal Procedure 41 and U.S.C. §§ 2703(c)(1)(A) for information about the location of the device utilizing cell phone number (706) 612-7300 (the "Target Cell Phone"), with listed subscriber who is believed to be ROY LEE DYKES ("DYKES"), whose service provider is Cellco Partnership d/b/a/ Verizon Wireless, a wireless telephone service provider headquartered at 180 Washington Valley Rd, Bedminster, NJ 07921. The Target Cell Phone is described herein and in Attachment A, and the location information to be seized is described herein and in Attachment B.

## AFFIANT BACKGROUND

2. I have been employed as a Special Agent with the ATF since April 2007. I received my training with the Federal Law Enforcement Training Center (FLETC) and ATF National Academy in Brunswick, Georgia. At the ATF National Academy we trained in various

investigative techniques to include preparing a proper search warrant. Since becoming a Special Agent with ATF, I have participated on several search and arrest warrants. I have a Bachelor of Science Degree in Criminal Justice from Radford University and a Master of Science Degree in Criminal Justice and Police Studies from Eastern Kentucky University. I have successfully completed a basic law enforcement academy with the Newport News Virginia Police Department.

3. The facts in the affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. The affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about the matter.

4. Based on the facts set forth in the affidavit, there is probable cause to believe that DYKES has violated 21 U.S.C. § 841. In addition, there is also probable cause to believe that the disclosure of location information described in Attachment B will assist law enforcement in investigating DYKES continuing violation of 21 U.S.C. § 841 and will be relevant and material to the investigation.

## PROBABLE CAUSE

5. On September 19, 2017, Bureau of Alcohol, Tobacco, Firearms and Explosives Special Agents interviewed a Confidential Informant ("CI-1") regarding narcotics trafficking in Southwest Virginia. CI-1 stated a friend introduced CI-1 to a black male from Georgia (GA) known as Roy, later identified as Roy Lee DYKES. CI-1 started purchasing prescription pain pills (Oxycodone) from DYKES during November/December 2016. CI-1 purchased 15mg (15's) and 30mg (30's) Oxycodone pills from DYKES. DYKES sells 15's for $16 a pill and 30's for $32 to $35 a pill. CI-1 has purchased as little as 4-5 pills and as many as 40-50 pills from DYKES at

once. DYKES will call or text CI-1 before coming to town. CI-1 has met DYKES at the McDonalds and Hardees in Duffield, VA; the Burger King in Big Stone Gap; and a small piece of property in BSG that DYKES claims he owns. According to the CI-1, DYKES travels to the area regularly to distribute Pills, Cocaine and Crystal Methamphetamine to numerous people. CI-1 stated DYKES comes on the first and third of each month because that is when people get their government and state subsistence checks (Social Security, Disability, etc.) DYKES has told CI-1 he sells drugs to people in Kingsport, TN, Johnson City, TN, Wise County, VA and Scott County, VA. DYKES has shown CI-1 other drugs he sells, to include Cocaine, Crystal Methamphetamine and an assortment of other pills. CI-1 has seen DYKES with a bag of Crystal Methamphetamine described as the size of a small baseball. DYKES has tried multiple times to convince CI-1 to purchase Cocaine. CI-1 stated the last time CI-1 purchased pills from DYKES was approximately the first week of September 2017, where CI-1 purchased five or six Oxycodone pills. CI-1 provided DYKES cell phone number as 706-612-7300 (the target cell phone). Agents were able to locate a picture of DYKES using the cell phone number. CI-1 identified the picture as the person they know as Roy from GA. At the direction of agents, CI-1 conducted a recorded phone call to DYKES at the target cell phone number. DYKES stated he was coming to town the following day, September 20, 2017. DYKES said he would be in town at 6am. DYKES said he was bringing "Halves" (15's), "Wholes" (30's), "Slobber Biscuits" (Xanax Pills) and "Soft Dust" (Cocaine).

6. On October 17, 2017, Bureau of Alcohol, Tobacco, Firearms and Explosives Special Agents interviewed a Confidential Informant ("CI-2"). CI-2 stated a coworker introduced CI-2 to a person named "George" for the purpose of purchasing narcotics, particularly prescription pills. Agents identified "George" as Roy Lee DYKES. The first 2-3 times CI-2 purchased pills

from DYKES, CI-2 had to go through the coworker. CI-2's coworker would make money or a cut of the pills for facilitating the deals. CI-2 was eventually able to make contact with DYKES on the phone at the target cell phone number. DYKES agreed to sell to CI-2 directly. CI-2 purchased approximately $200 - $300 worth of 30mg Oxycodone pills (Roxy's) and 2mg Xanax pills from DYKES once a week for 3-4 months. DYKES sold 30mg Roxy's pills for $30 each and the 2mg Xanax pills for $8 each. CI-2 reported seeing DYKES with a bag containing hundreds of pills. CI-2 reported meeting DYKES at several locations including Johnson City TN, Gray TN, Weber City VA, Big Stone Gap VA, Pennington Gap VA, and Jonesville VA. DYKES has asked CI-2 to purchase Cocaine or Crystal Methamphetamine (ICE). DYKES gave CI-2 "one point" (.1 grams) of ICE to try. CI-2 believed DYKES sells a gram of Cocaine for $100 and an ounce of ICE for $1,800. CI-2 reported seeing DYKES with a bag of ICE described as the size of a softball.

7. On October 20, 2017, CI-2 sent a text message to Roy DYKES at the target cell phone number inquiring when DYKES would be in town next to sell narcotics. Via text message and at the direction of law enforcement, CI-2 arranged to meet DYKES later that evening in Johnson City TN to purchase ICE and pills. Later that day, DYKES called CI-2 from the target cell phone number to make sure the deal was still on and to discuss when DYKES would be in town. DYKES said it was a four and a half to five hour drive for him, and he would update CI-2 when he would be arriving.

8. On October 20, 2017, at approximately 8:00 pm, CI-2 met with ATF Special Agents at a predetermined location. Agents searched CI-2's person and vehicle and found no weapons, currency or contraband. Agents provided CI-2 with an electronic recording device and an amount of US currency. At approximately 8:35pm, agents followed CI-2 as they travelled to the deal location, Fast Fuel gas station, 239 US-23 Weber City, VA 24290, arriving at 8:40pm. Shortly

after arriving to Fast Fuel gas station, DYKES called CI-2 from the target cell phone number. DYKES said he was at the Marathon gas station, across and down the street. DYKES said he would come to CI-2's location. At approximately 8:51pm, a black Mercedes Benz pulled into Fast Fuel and parked next to CI-2's vehicle. An individual recognized by CI-2 and agents conducting surveillance as DYKES exited the passenger side of the Mercedes. DYKES got into the passenger side of CI-2's vehicle. CI-2 gave DYKES $2,100 in US currency, and in return received 20 suspected Oxycodone 30mg pills and 29 grams of suspected Crystal Methamphetamine (which later field tested positive). DYKES exited CI-2's vehicle and got back into the Mercedes. The Mercedes exited the gas station and proceeded onto Interstate 26. Agents followed CI-2 from Fast Fuel to a predetermined location. Agents obtained the bag of narcotics and electronic recording device from CI-2. Agents searched CI-2's person and vehicle and found no weapons, currency or contraband.

9. On October 30, 2017, CI-2 communicated with DYKES (706-612-7300), through text messages setting up a narcotics purchase for the upcoming Wednesday (11/1/17). CI-2 stated they wanted to purchase "10 and 10" (ten 30mg Oxycodone pills and ten 2mg Xanax pills). CI-2 also stated, "my buddy wants some go fast" (Crystal Methamphetamine, referred to as ICE). Dykes inquired how much ICE. CI-2 text, "the same as last time", referring to the ounce purchase on October 20, 2017. On October 31, 2017, CI-2 spoke with DYKES on the phone (706-612-7300). DYKES said he would be in town the following morning by 7:40am at the latest. On November 1, 2017, at approximately 6:15am CI-2 received a phone call from DYKES (706-612-7300). DYKES said he was in Weber City, VA sitting at the Marathon Gas Station. CI-2 said they would be there as soon as they could. At approximately 7:00am, CI-2 met with ATF SAs and ATF Undercover SA (referred to as ATF UC) at a predetermined location. SAs searched CI-2's

person and vehicle and found no weapons, illegal substance or contraband. SAs provided CI-2 with an electronic recording device and an amount of documented US currency. SAs followed CI-2 and ATF UC as they travelled to the Marathon gas station, 506 US-23 North Weber City, VA 24290. CI-2 and ATF UC arrived at the Marathon gas station at approximately 7:16am. SAs observed a black female, later identified as Leila Varetta HECTOR (DYKES wife); exit the black Chevy Silverado, referred to as the Target Vehicle. HECTOR walked into the gas station and CI-2 got into the Target Vehicle. DYKES said the Target Vehicle was HECTOR's brothers. DYKES showed CI-2 the pills and stated, "these are Xanax's, if you want to pull them up (lookup online) and check them you can". DYKES continued to say, "those (Xanax's) are the hottest thing on the market right now". CI-2 purchased ten 30mg Roxicodone pills and ten 2mg Xanax pills from DYKES for $380. DYKES then agreed to meet and deal with CI-2's friend (ATF UC). At approximately 7:20am, CI-2 exited the Target Vehicle. Minutes later, ATF UC entered the Target Vehicle. DYKES told ATF UC that CI-2 was short $20. ATF UC then gave DYKES $20 to cover CI-2. ATF UC purchased one ounce of ICE from DYKES for $1,500. DYKES stated he likes to gamble at the Harrah's Casino in Cherokee, NC and Harrah's Casino in Murphy, NC. DYKES said he won $9,000 at the Casino in Murphy. DYKES obtained ATF UC's phone number. ATF UC then exited the Target Vehicle as HECTOR entered it. At approximately 7:26am, SAs followed CI-2 and ATF UC from the Marathon gas station to a predetermined location. SAs obtained a napkin from CI-2, which contained ten Oxycodone and ten Xanax pills they purchased from DYKES. SAs also retrieved the electronic recording device from CI-2. SAs searched CI-2's person and vehicle and found no weapons, illegal substances or contraband. SAs de-briefed CI-2 and UC about the transaction with DYKES. On November 3, 2017, ATF SA Levesque weighed

and field-tested the ICE purchased from DYKES on 11/1/17. The bag of ICE weighed 28.3 grams and tested positive for methamphetamine.

10. On November 8, 2017 at approximately 7:50am, DYKES (706-612-7300) texted ATF UC. DYKES said they were passing the rest area on I-26 (exit 5). At approximately 8:06am, ATF agents assigned to surveillance identified a Ford F-150 Pickup Truck, GA registration: CFG-9809 (referred to as the Target Vehicle) pull into the Marathon Gas Station, 506 US-23 North Weber City, VA 24290. DYKES exited the Target Vehicle and started pumping gas as ATF UC made contact with DYKES. Leila Varetta HECTOR also exited the Target Vehicle and went inside the gas station. After DYKES finished pumping gas, he parked the Target Vehicle in front of the gas station. ATF UC got in the front passenger seat of the Target Vehicle. After brief conversation, ATF UC handed DYKES $1,500 for an ounce of ICE and $100 for Xanax Pills. DYKES then handed ATF UC a bag of suspected ICE and Xanax Pills. ATF UC exited the Target Vehicle as HECTOR entered. ATF SA Levesque obtained the narcotics from ATF UC. SA Levesque identified one bag of suspected ICE, weighing 28.2 grams and field-testing positive for Methamphetamine. SA Levesque also identified thirteen Alprazolam "Xanax" Pills. The Xanax pills were divided into seven green pills marked "S/90/3" and six yellow pills marked "R/O/3/9".

11. On November 19, 2017, according to cell tower data provided by Verizon Wireless, DYKES cell phone traveled from his residence in Watkinsville, GA to the area where Harrah's Cherokee Casino is located in Cherokee, NC. On the same day, DYKES sent DTF UC a text message saying he would be in southwest Virginia the following day.

12. On November 20, 2017, DTF UC communicated with DYKES (Target Telephone) through text messages and phone calls. DYKES stated he was in southwest Virginia, which ATF SAs verified through DYKES cell tower location.

a. DYKES told DTF UC his vehicle had broken down in Dot (a section of Lee County, VA). DYKES said while he was broken down, a Virginia State Trooper stopped and searched his vehicle. DTF SAs observed DYKES driving in Pennington Gap, VA shortly after he allegedly broke down. SAs also verified with VSP, that no vehicle search or call for service occurred with DYKES or in the Dot area on 11/20/17. DTF UC and DYKES decided not to meet.

13. On November 20, 2017, ATF SA Levesque and SA Vines made contact with Harrah's Cherokee Casino personnel, to include head of security, the Regional Compliance Manager and the Executive Director for Cherokee Tribal Gaming. Personnel at the casino verified both Roy DYKES and Leila HECTOR were gambling at the casino the day before (11/19/17). It appeared DYKES left HECTOR at the casino on the morning of the 20th, while he traveled to southwest Virginia (to meet DTF UC). According to HECTOR's "Players Card", HECTOR was gambling during the time DYKES was in southwest Virginia. Security footage captured DYKES and HECTOR park their vehicle in the parking deck of the Casino around 2pm on the 11/20/17.

a. The Compliance Manager pulled DYKES's gambling records for this recent trip. According to records, on 11/19/17, DYKES used the casino cashier cage to cash in $1,500, exchanging $20 bills for $100 bills. After DYKES arrived back to the casino on 11/20/17, from southwest Virginia, he again used the casino cashier cage to cash $700, exchanging $20 bills for $100 bills. DYKES and HECTOR then sat down at blackjack table, each buying in for $200, both using $20 bills. After DYKES and HECTOR were finished gambling, DYKES cashed in $250 in casino chips. DYKES and HECTOR then traveled back to Watkinsville, GA.

14. On December 1, 2017, ATF and DTF SAs conducted surveillance in southwest VA (Weber City and Duffield) anticipating a scheduled narcotics purchase with Roy DYKES. At approximately 7:20am, ATF UC received a text message from Target Telephone. DYKES stated "they" had just left Gray, TN and would be in Weber City, VA shortly. At approximately 7:35am, SAs identified a Silver Chevy Silverado, GA: CHK-8177, pull into the Marathon Gas Station. A few minutes later, ATF UC arrived to the Marathon Gas Station and made contact with DYKES, who was driving the Silverado. ATF UC got into the backseat of the Silverado because an unknown black male, later identified as Timothy PEEK, occupied the front passenger seat of the Silverado. DYKES showed ATF UC a bag containing suspected Crystal ICE, Oxycodone pills and Xanax pills. ATF UC counted out $1,930 and handed it to DYKES, $1,500 for an ounce of ICE, $330 for ten 30mg Oxycodone pills and $100 for thirteen 2mg Xanax pills. DYKES handed ATF UC the bag of drugs. ATF UC exited the Silverado.

15. On December 6, 2017, Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) Undercover Agent (ATF UC) received a text message from the Target Telephone.

    a. DYKES: "Hey young man. I be in Friday with 80 pies and that great shit. And plenty of pain. Whats up. Also I will be gone until Dec. 30th."

16. On December 7, 2017, DTF UC received a phone call from the Target Telephone. DYKES stated he would be coming to southwest Virginia on 12/8/2017.

17. On December 8, 2017, at approximately 8:52am, DYKES (Target Telephone) contacted DTF UC asking to meet at the McDonalds in Pennington Gap, VA. Shortly after, SAs observed DYKES at Hardees in Pennington Gap. An unknown white male was in the passenger seat of DYKES vehicle, later identified as James Lee CLEGHORNE who resides at 1114 Lexington Carleton Rd. Carlton, GA. At approximately 9:05am, The DYKES met DTF UC at the

McDonalds. DYKES got into DTF UC's vehicle. DTF UC purchased one ounce of Crystal Methamphetamine from DYKES for $1,500.

18. On December 13, 2017, DYKES (Target Telephone) sent a text message to ATF UC.

   a. DYKES: "How you looking? Need anything? Pain? Pies? We had to cancel the job in Florida because the owner got damn eaten alive by two damn dogs. I Didn't want to go anyhow to be honest."

19. December 16, 2017, DYKES (Target Telephone) sent a text message to ATF UC.

   a. DYKES: "Coming your way in the a.m. Do you need any pain or wagonwheels?

   b. According to records provided by Verizon Wireless, the Target Telephone traveled to Southwest Virginia on December 17, 2017. DYKES (Target Telephone) communicated with the following phone numbers on 12/16/17 and/or 12/17/17:

      i. WELLS Residence 28x (276-565-1257)
      ii. OWENS Residence 23x (276-523-2523)
      iii. Leslie WELLS 14x (276-219-1697)
      iv. WELLS 14x (276-565-1077)
      v. CI 7x (423-817-8512)
      vi. KY # 6x (606-505-0796)
      vii. Tim BARR 3x (276-639-6870)
      viii. April BARNETT 2x (276-639-2895)
      ix. Audrey WOODWARD 1x (276-594-0095)

20. On December 27, 2017, DYKES (Target Telephone) sent a text message to ATF UC.

   a. DYKES: "Be that way Friday in the a.m. What's up? Have pain and zans and other stuff."

21. On December 29, 2017, ATF SAs observed DYKES driving his Ford F-150, GA license plate: CFG9809, on US Hwy 58N/23W, past Gate City, VA. SAs surveilled DYKES throughout the day observing him meet with known narcotic users and distributors in Lee County and Big Stone Gap, to include:

   a. Tim BARR
   b. Douglas URNICK
   c. Rebecca OWENS
   d. Audrey WOODWARD
   e. Dale LEICHTENBERG

      i. According to records provided by Verizon Wireless, DYKES cell phone (Target Telephone) communicated with these subjects cell/house phones prior to their meetings.

22. In my training and experience, I have learned that Cellco Partnership d/b/a Verizon Wireless is a company that provides cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that all them to collect and generate at leat two kinds of information about the locations of the cellular telephones to which they provide service: (1) E-911 Phase II data, also known as GPS data or latitude-longitude data, and (2) cell-site data, also known as "tower/face information" or cell tower/ sector records. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers. Cell-site data identifies the "cell-towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, eve in urban areas, and can be 10 or

more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data is typically less precise that E-911 Phase II data.

23. Based on my training and experience, I know that Cellco Partnership d/b/a Verizon Wireless can collect cell-site data about the Target Cell Phone.

## AUTHORIZATION REQUEST

24. Based on the foregoing, I request that the Court issue the proposed warrants, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c).

25. I further request that the Court direct Cellco Partnership d/b/a Verizon Wireless to disclose to the government any information described in Attachment B that is within the possession, custody, or control of Cellco Partnership d/b/a Verizon Wireless. I also request that the Court direct Cellco Partnership d/b/a Verizon Wireless to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with Cellco Partnership d/b/a Verizon Wireless's services, including by initiating a signal to determine the location of Target Telephone on Cellco Partnership d/b/a Verizon Wireless's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall reasonably compensate Cellco Partnership d/b/a Verizon Wireless for reasonable expenses incurred in furnishing such facilities or assistance.

26. I further request that the Court authorize execution of both the Provider Tracking Warrant and the Investigative Device Warrant at any time of day or night, owing to the potential need to locate the Target Telephone outside of daytime hours. In particular, allowing execution

of the warrants in the nighttime (when DYKES is likely to be immobile) will allow officers to ascertain location with greater precision.

27. I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrants to delay notice until 30 days after the collection authorized by the warrant has been completed. The delay is justified because there is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of Target Telephone could jeopardize this investigation, giving him/her an opportunity to change patterns of behavior or flee prosecution. See 18 U.S.C. § 3103a(b)(1). As further specified in Attachment B, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property. See 18 U.S.C. § 3103a(b)(2). Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above. See 18 U.S.C. §3103a(b)(2).

28. I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the Target Cell Phone outside of daytime hours.

29. I further request that the court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that I neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

30. I declare under the penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Respectfully Submitted,

_____
Stephen Levesque
Special Agent
Bureau of Alcohol, Tobacco, Firearms, and Explosives

Sworn and subscribed before me on January 11, 2018.

_____
Honorable ~~Pamela M. Sargent~~ JAMES P. JONES
United States ~~Magistrate~~ Judge
DISTRICT

Reviewed by:
M. Suzanne Kerney-Quillen
M. Suzanne Kerney-Quillen
Special Assistant U.S. Attorney
1/11/18